Filed 10/15/25  P. v. Ramirez CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062751 |
| v. | (Super. Ct. No. INF1700358) |
| JAIME RAMIREZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Riverside County, Dean Benjamini, Judge. Affirmed in part, modified in part, reversed in part, and remanded with directions.

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant

Attorney General, Arlene A. Sevidal and Arlyn Escalante, Deputy Attorneys General, for Plaintiff and Respondent.

*      *      *

Defendant Jaime Ramirez was convicted of multiple sex crimes against his biological daughter and two stepdaughters. On appeal, Ramirez raises the following claims of error: (1) the evidence to support his convictions on counts 4 and 7 was insufficient because the prosecution failed to prove the victim was 14 years of age or older, and the evidence was insufficient to prove the great bodily injury enhancement as to count 9; (2) the trial court failed to properly instruct the jury; (3) his conviction on count 21 for sodomy with a minor must be reduced to sodomy because sodomy with a minor is not a lesser included offense of aggravated sexual assault of a child under the age of 14 by committing forcible sodomy; (4) the prosecutor committed misconduct by indoctrinating and conditioning the jury panel during voir dire and improperly vouching for the witnesses during closing argument; (5) cumulative error requires reversal of his conviction; (6) the court erred by failing to stay sentence on two counts pursuant to Penal Code[1] section 654; (7) the court erred in imposing sentence on counts 4, 6, 7, and 15–17 pursuant to a sentencing enhancement that had not been pled and proven; (8) the court erred in imposing a consecutive indeterminate term on count 11; and (9) the first amended abstract of judgment must be corrected to accurately reflect the judgment.

We conclude Ramirez's conviction on count 21 must be modified to sodomy because he was improperly convicted of a lesser related offense of

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

2

sodomy with a minor. We further conclude the trial court erred in imposing sentence pursuant to a sentencing enhancement which had not been pled and proven at trial, and therefore, Ramirez's sentences on counts 4, 6, 7, and 15–17 must be reversed and remanded to the court for resentencing. We also find the court erred in imposing sentence on count 11 and reverse and remand for resentencing. Finally, the first amended abstract of judgment must be corrected to accurately reflect the judgment, and we therefore remand to the court for that purpose. We reject Ramirez's other claims of error and otherwise affirm the judgment.

## FACTS

A.P. met Ramirez in 2000; she and her two young daughters, then 9-year-old M. and 6-year-old C., moved in with Ramirez and his brother's family in 2001. A.P. gave birth to Ramirez's daughter D. that year and to their son in 2003. Ramirez committed numerous sexual crimes against his two stepdaughters, M. and C., and his biological daughter, D., beginning when they were young and continuing until adulthood. Ramirez was initially charged with 24 counts against C., M., and D.

A jury found Ramirez guilty of the following crimes against C.: (1) lewd or lascivious act upon a child under the age of 14 years (§ 288, subd. (a); count 1); (2) aggravated sexual assault upon a child under the age of 14 and seven or more years younger than the defendant, by committing rape (§ 261, subd. (a)(2); count 2); (3) forcible sexual penetration of a minor 14 years of age or older (§ 289, subd. (a)(1)(C); count 4); (4) two counts of forcible rape (§ 261, subd. (a)(2); counts 6, 9); and (5) sodomy by force on a minor 14 years of age or older (§ 286, subd. (c)(2)(C); count 7).

The jury found Ramirez guilty of the following crimes against M.: (1) lewd or lascivious act upon a child under the age of 14 years (§ 288, subd.

3

(a); count 10); (2) aggravated sexual assault of a child under the age of 14 and seven or more years younger than the defendant, by committing rape (§ 269, subd. (a)(1); count 11); (3) two counts of committing a lewd or lascivious act by force upon a child under the age of 14 (§ 288, subd. (b)(1); counts 12, 13); (4) oral copulation with a person under the age of 16 years by a person over the age of 21 years (§ 288a, subd. (b)(2); count 14); (5) two counts of forcible rape (§ 261, subd. (a)(2); counts 15, 17); and (6) oral copulation by force, fear, or threats (§ 288a, subd. (c)(2); count 16).

The jury found Ramirez guilty of the following crimes against D.: (1) lewd or lascivious act upon a child under the age of 14 (§ 288, subd. (a); count 18); (2) lewd or lascivious act by force upon a child under the age of 14 (§ 288, subd. (b)(1); count 19); (3) aggravated sexual assault of a child under the age of 14 and seven or more years younger than the defendant by committing sexual penetration (§ 289, subd. (a)(1)(A); count 20); and (4) by committing attempted rape by force (§§ 664/261, subd. (a)(2); count 22). The jury also found Ramirez guilty of the lesser included offense of sodomy with a minor, defendant 21 years of age or older (§ 286, subd. (b)(2), count 21).

The jury found true the allegation the victims were minors 14 years of age or older (§ 667.61, subd. (m)) as to counts 4, 6, 7, and 15–17; Ramirez inflicted great bodily injury upon the victim (§ 12022.8) as to count 9; and he committed a qualifying sex offense against more than one victim (§ 667.61, subd. (e)(4)).

The trial court sentenced Ramirez to prison for a term of 105 years to life plus 56 years, 2 months, consisting of an indeterminate sentence of consecutive terms of 15 years to life on each of counts 4, 6, 7, 11, and 15–17, and a determinate term of six years on each of counts 1, 2, 12, 13, and 20; six years for the offense plus five years for the section 12022.8

4

enhancement on count 9; two years on each of counts 10 and 18; eight years on count 19; eight months on each of counts 14 and 21; and one year and 10 months on count 22.

## DISCUSSION

### I.

### SUFFICIENCY OF THE EVIDENCE

Ramirez contends the evidence was insufficient to convict him of forcible sexual penetration of a minor 14 years of age or older in count 4 and forcible sodomy with a minor 14 years of age or older in count 7 because the prosecution failed to prove C. was 14 years of age or older at the time of the crimes. Ramirez also argues the evidence was insufficient to prove the great bodily injury enhancement as to count 9. We conclude the evidence adduced at trial was sufficient to prove each of these counts.

*A. Factual Background*

    1.  Count 4

C., who was an adult at the time of trial, testified the family was living in apartment number 56 at the time Ramirez began inappropriately touching her when she was approximately 11 years old. The four children shared a bedroom, but the girls' younger brother would often be in A.P. and Ramirez's bedroom. Ramirez would touch C. when her mother and older sister went to the store, and C. stayed home to watch her younger siblings. The touching started with Ramirez rubbing his hand on C.'s leg, breasts, and buttocks, both over and under her clothing.

Although it was difficult to remember exactly when, C. believed she may have been about 12 or 13 years old when Ramirez began touching the outside of her vagina under her clothing, as well as putting his fingers inside her vagina. These incidents occurred either in Ramirez's bedroom or

5

the living room when the other family members were absent. Ramirez told C. not to tell anyone and threatened to take her brother and sister away if she reported the sexual abuse. These incidents continued after C.'s 18th birthday.

During cross-examination, C. was asked if she told a police investigator in 2017 that these incidents occurred when she was "probably 14." C. responded, "I don't remember the age."

As charged in the first amended information and reflected in the verdict on count 4, the offense occurred "on, or between March 5, 2009 through March 4, 2010." The amended information further alleged the offense occurred in "9th Grade, Mom's room." C. was born in March 1995, and she graduated from high school at the age of 18, which would have been in 2013. Therefore, C. would have turned 14 in March of 2009, when she was in ninth grade.

2. Count 7

Ramirez put his penis "inside [C.'s] butt" on a single occasion in her mother's bedroom. C. asked Ramirez to stop and told him it was hurting her. C. believed she was in ninth grade when this occurred.

Count 7 was alleged to have occurred "on, or between March 5, 2009 through March 4, 2010." The amended information states the offense occurred in "9th Grade, Younger sibling's room." However, the verdict form for count 7 describes the event as occurring in "Mom's Room."

3. Count 9

C. testified Ramirez raped her on multiple occasions. The last time occurred after she had graduated from high school, around September or October 2013. Ramirez led her to the bedroom and took her clothes off, made her lie on the bed, and put his penis inside her vagina. C. did not want to have sex with Ramirez and did not agree to do so. On other similar occasions,

6

he had ejaculated on her breasts or her buttocks but this time he ejaculated inside her vagina. Ramirez seemed worried and told C. to hurry to the bathroom to urinate.

During this time period, C. was dating D.C., whom she later married. C. gave birth to a daughter born in June 2014. When C. turned 21, she got drunk and told D.C. that her daughter might be Ramirez's child. After C. reported Ramirez to the police, an investigator took a sample of both Ramirez's and C.'s daughter's DNA. The test confirmed Ramirez was the father of C.'s daughter.

C. reported the sexual abuse to her mother on two separate occasions, one of which was when she was in middle school, but her mother did not do anything about it.

*B. Legal Standard*

"When an appellant challenges the sufficiency of the evidence to support a conviction, the appellate court reviews the entire record to see "'whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.'""(*People v. Cochran* (2002) 103 Cal.App.4th 8, 12–13 (*Cochran*), disapproved on other grounds in *People v. Soto* (2011) 51 Cal.4th 229, 248, fn. 12.) "We view the facts in the light most favorable to the judgment, drawing all reasonable inferences in its support." (*Cochran*, at p. 13.) "The test on appeal is not whether we believe the evidence established the defendant's guilt beyond a reasonable doubt, but whether ""*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.""" (*Ibid.*)

Our Supreme Court has held that generic testimony regarding sexual molestation may constitute substantial evidence to sustain a

conviction under section 288, subdivision (a): "It must be remembered that even generic testimony (e.g., an act of intercourse 'once a month for three years') outlines a series of *specific*, albeit undifferentiated, incidents *each* of which amounts to a separate offense, and *each* of which could support a separate criminal sanction." (*People v. Jones* (1990) 51 Cal.3d 294, 314 (*Jones*).) The court noted, "the victim's failure to specify precise date, time, place or circumstance [does not] render generic testimony insufficient," because "the particular details surrounding a child molestation charge are not elements of the offense and are unnecessary to sustain a conviction." (*Id.* at p. 315.)

In order for generic testimony to be sufficient to sustain a conviction, "[t]he victim . . . must describe *the kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g., lewd conduct, intercourse, oral copulation or sodomy). Moreover, the victim must describe the *number of acts* committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., 'twice a month' or 'every time we went camping'). Finally, the victim must be able to describe *the general time period* in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us'), to assure the acts were committed within the applicable limitation period. Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction." (*Jones, supra*, 51 Cal.3d at p. 316.)

8

*C. Analysis*

1.  Counts 4 and 7

Here, the generic testimony was sufficient for the jury to find Ramirez guilty of the crimes in counts 4 and 7. Regarding count 4, C. testified about the type of act, i.e., Ramirez's digital penetration of her vagina, when these acts occurred, i.e., on occasions when her mother and M. went to the store, and the general time period in which they happened, i.e., beginning when she was 12 or 13 years old and continuing after she graduated from high school. Because C. testified to multiple incidents occurring from the age of 12 or 13 years and continuing after high school, the jury could reasonably have found Ramirez committed at least one violation of section 289, subd. (a)(1)(C), in the period between March 2009, when C. turned 14, through March 2010, when she turned 15.

Regarding count 7, C. testified about the type of act, i.e., Ramirez forcibly putting his penis inside her anus; when this act occurred, i.e., on a single occasion in her mother's bedroom; and the general time period in which it happened, i.e., when she was in ninth grade, during which time she was 14 years of age.

2.  Count 9

The prosecution's theory of great bodily injury was premised on C.'s pregnancy, which occurred as a result of the forcible rape in count 9. In order to establish a great bodily injury enhancement under section 12022.8, the prosecution must prove the defendant personally inflicted great bodily injury, as defined in section 12022.7, during the commission of one of the sexual felonies enumerated in section 12022.8. Such felonies include rape "by force, violence, duress, menace, or fear of immediate and unlawful bodily

9

injury on the person or another." (§ 261, subd. (a)(2); see also *People v. Cross* (2008) 45 Cal.4th 58, 63, fn. 2 (*Cross*).)

Great bodily injury is defined in section 12022.7, subdivision (f), as "a significant or substantial physical injury." The victim need not have suffered a permanent or prolonged injury, disfigurement, or impairment. (*People v. Escobar* (1992) 3 Cal.4th 740, 750 (*Escobar*); *Cross, supra,* 45 Cal.4th at p. 64.) The great bodily injury must be "'*beyond* that inherent in the offense'" of rape. (*Ibid.*)

The question regarding "whether a victim has suffered physical harm amounting to great bodily injury is not a question of law for the court but a factual inquiry to be resolved by the jury." (*Cross, supra,* 45 Cal.4th at p. 64.) The jury's finding must be upheld as long as it is supported by substantial evidence. (*Escobar, supra,* 3 Cal.4th at p. 750.)

Courts have held a pregnancy may qualify as a great bodily injury. In *People v. Sargent* (1978) 86 Cal.App.3d 148, 150, the defendant forcibly raped a 17-year-old girl at knifepoint. The girl became pregnant and had an abortion. (*Ibid.*) The court held "[p]regnancy resulting from rape is great bodily injury." (*Id.* at p. 151.) Given the "[m]ajor physical changes" that take place in a woman's body during pregnancy, the court observed "[p]regnancy cannot be termed a trivial, insignificant matter," and "[i]t is all the more devastating when imposed on a woman by forcible rape." (*Ibid.*)

In *Cross*, our Supreme Court found there was sufficient evidence to support a great bodily injury enhancement based solely upon a pregnancy without medical complications that resulted from unlawful but nonforcible sexual conduct with a minor. (*Cross, supra,* 45 Cal.4th at pp. 65–66.) The court found it unnecessary, however, to decide "whether every pregnancy resulting from unlawful sexual conduct, forcible or otherwise, will invariably

10

support a factual determination that the victim has suffered a significant or substantial injury, within the language of section 12022.7." (*Id.* at p. 66.) The court in *Cross* limited its holding to the factual circumstances of the victim's pregnancy, which resulted in a late term surgical abortion and hospital stay. (*Id.* at pp. 62, 66.) Because the underlying crime in *Cross* involved a nonforcible sexual offense, the court did not consider whether forcible rape, resulting in pregnancy, invariably supports a factual determination of great bodily injury.

Ramirez attempts to distinguish these cases, arguing C.'s pregnancy did not constitute great bodily injury because she was not a minor or virgin when impregnated, and there was no evidence presented at trial that her pregnancy or labor was difficult. However, the fact C. was not a minor or virgin does not compel a finding she did not suffer great bodily injury as a result of the forcible rape, nor does a lack of evidence regarding the particular circumstances of C.'s pregnancy. (*People v. Smith* (2005) 37 Cal.4th 733, 738–739.) "If the circumstances reasonably justify the jury's findings, the reviewing court may not reverse the judgment merely because it believes that the circumstances might also support a contrary finding." (*People v. Gresham* (2025) 113 Cal.App.5th 59, 68.)

## II.

### INSTRUCTIONAL ERROR

Ramirez raises the following claims of instructional error: (1) the trial court failed to instruct the jury on the offense of forcible sexual penetration of a minor 14 years of age or older in count 4; (2) the court failed to instruct the jury regarding unanimity on counts 6, 14, and 15; (3) the court erred in instructing the jury regarding Child Sexual Abuse Accommodation Syndrome (CSAAS); and (4) instructing the jury with CALCRIM No. 3515

11

reduced the prosecution's burden of proof. We reject Ramirez's claims of instructional error.

## A. Legal Standard

We review claims of instructional error de novo. (*People v. Cole* (2004) 33 Cal.4th 1158, 1210 (*Cole*).) "'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.'" (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1112.) "'"[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction."'" (*People v. Musselwhite* (1998)17 Cal.4th 1216, 1248. "'"The absence of an essential element in one instruction may be supplied by another or cured in light of the instructions as a whole."'" (*People v. Castillo* (1997) 16 Cal.4th 1009, 1016 (*Castillo*).)

In determining whether an instruction is ambiguous or misleading, the court considers "the specific language challenged, the instructions as a whole[,] the jury's findings" (*People v. Cain* (1995) 10 Cal.4th 1, 36 (*Cain*)), and closing arguments by counsel to determine whether the instructional error "would have misled a reasonable jury" (*id.* at p. 37).

Reversal is not required unless it is reasonably likely the jury misunderstood and misapplied the court's instructions to the defendant's detriment. (See *People v. Smithey* (1999) 20 Cal.4th 936, 963–964.) A trial court's failure to instruct the jury on all elements of an offense is a constitutional error "subject to harmless error analysis under both the California and United States Constitutions." (*People v. Flood* (1998) 18 Cal.4th 470, 475.)

*B. Analysis*

Ramirez claims the trial court committed reversible error in instructing the jury. We address each alleged instructional error in turn.

1. Failure to Instruct on Forcible Sexual Penetration of a Minor

Ramirez contends the trial court erred in instructing the jury regarding the crime of forcible sexual penetration with a minor 14 years of age or older (§ 289, subd. (a)(1)(C)) in count 4. Although the jury was instructed on the offense of forcible sexual penetration (§ 289, subd. (a)(1)(A)), the instruction stated it applied to count 20, not count 4. Additionally, the jury was not instructed on the age requirement element of the offense in count 4. Ramirez contends this instructional error was not harmless, and therefore, reversal of his conviction of count 4 is required.

When initially discussing jury instructions, the trial court and counsel agreed that the court would instruct the jury with CALCRIM No. 1045 regarding forcible sexual penetration. They also agreed that, because C. testified Ramirez had sexually penetrated her by force from the age of 13 until she was in the 12th grade, the specification of the age element for section 289, subdivision (a)(1)(C) was not required. The court agreed to give an unanimity instruction for count 4. The court also discussed the instructions for the lesser included offenses for count 4.

However, when later finalizing the jury instructions, the trial court asked counsel whether count 20 was the only sexual penetration count for which the court would instruct the jury with CALCRIM No. 1045. Both the prosecutor and defense counsel mistakenly agreed count 20 was the only count brought pursuant to section 289.

The trial court instructed the jury regarding count 4 as follows: "To decide whether the defendant intended to commit sodomy, in violation of

13

. . . . section 286[, subdivision] (c)(2)(C) or [section] 286[,subdivision] (c)(2)(B); sexual penetration by force, in violation of . . . section 289[, subdivision] (a)(1)(C); or rape, in violation of Penal Code section 261[, subdivision] (a)(2), please refer to [CALCRIM Nos.] 1030, 1045, and 1000, which define[] those crimes. Those instructions are going to be coming up in a couple of minutes here."

The trial court then instructed the jury with CALCRIM No. 1045, but only as to count 20, "The defendant is charged in Count 20 with sexual penetration by force, in violation of . . . section 289[, subdivision] (a)(1)(A). To prove the defendant is guilty of this crime, the People must prove that: [¶] One, the defendant committed an act of sexual penetration with another object—another person. Excuse me. [¶] Two, the penetration was accomplished by use of a foreign object. [¶] Three, the other person did not consent to the act. [¶] And four, the defendant accomplished the act by force or duress."

The trial court further instructed the jury that, if it found Ramirez guilty of count 4, it also had to decide whether the prosecution proved the additional allegation he committed the crime against a victim who was over the age of 14 at the time of the offense.

The trial court also instructed the jury with CALCRIM No. 3501 regarding unanimity as to count 4 as follows: "The defendant is charged with sexual penetration by force , . . . section 289[, subdivision] (a)(1)(C), in Count 4, sometime during the period of March 5, 2009, to March 4, 2010. [¶] The People have presented evidence of more than one act to prove the defendant committed this offense. You must not find the defendant guilty unless: [¶] One, you all agree the People have proved the defendant committed at least one of those acts, and you all agree on which act Defendant committed. [¶] Or

14

you all agree the People have proved the defendant committed all the acts alleged to have occurred during the time period."

During closing argument, the prosecution explained count 4 as follows: "Count 4, for your consideration with regards to [C.], was sexual penetration with [C.]. Now, remember, this is different than sexual intercourse. This is different than what we think about rape. This is not a sex organ in her vagina. This is not a penis inside her vagina. This is a foreign object, and in this case, this would have been his fingers inside her vagina.

"So it's sexual penetration, no matter how slight; right? ·That means if you just break the labia minora—the majora on the very top of that vagina, you've done enough. Again, it's a different standard than what we look for in actual sexual penetration or rape. She did not consent.

"Again, in all of these cases, ladies and gentlemen, in all of these situations, there's nothing to suggest that [C.] consented to any of these.

"And that force or fear was used. She talks about the defendant mentioning that she wouldn't see her brother and sister. She talks about having to push him away during this time, during this occurrence. It's the People's position, folks, that Penal Code section 289[, subdivision] (a)(1), the sexual penetration with force or duress has been proven beyond a reasonable doubt."

Here, the jury instructions as a whole, together with closing arguments, adequately instructed the jury as to the essential elements of count 4. (*Castillo*, *supra*, 16 Cal.4th at p. 1016.) Although the jury did not receive instruction specifically related to count 4, it nevertheless was instructed with CALCRIM No. 1045 regarding the elements of sexual penetration by force as to count 20. Furthermore, the prosecutor accurately described all of the required elements of sexual penetration by force of a

minor age 14 years or older during closing argument. Additionally, regarding the age element for count 4, the jury found true the allegation that C. was over the age of 14 when Ramirez digitally penetrated her.

Even if the trial court erred in failing to specifically instruct the jury regarding count 4, any error was harmless. As discussed above, C.'s testimony constituted sufficient evidence to prove count 4 beyond a reasonable doubt, including that she was 14 years of age or older at the time of the crime. It is not reasonably likely the jury would have acquitted Ramirez of count 4 if it had been instructed regarding the elements of sexual penetration by force.

2.   Failure to Instruct Regarding Unanimity

Ramirez contends the trial court erred in failing to instruct on unanimity regarding counts 6, 14, and 15 because the prosecution presented evidence of more than one act for each of these crimes. We conclude the court was not required to provide an unanimity instruction on counts 6, 14, and 15 because the prosecutor elected a specific incident in closing argument for each of those counts.

During discussions regarding jury instructions, neither the trial court nor the parties requested an unanimity instruction regarding counts 6, 14, or 15.

The prosecutor addressed count 6 in closing argument:

"The next count for your consideration, folks, is Count 6, and that's a [section] 261[, subdivision] (a)(2). Again this is unlawful sexual intercourse with [C.]. This would have taken place per her testimony in the 10th grade. She describes this instance taking place in her sibling's room; right?"

16

The prosecutor addressed count 14 in closing argument:

"Count 14, this would have been the aforementioned oral copulation with [M.]. This would have been the defendant having [M.] place his penis in her mouth. Again, one of the elements is the defendant was at least 21 years of age. We know that to be true and that [C.] [sic] was under the age of 16.

"This incident would have taken place in Apartment 30, so we've shifted venues a little bit. Just for sake of ease, just so you, folks, can keep things straight, now we're at Apartment 30. If you recall, there were two apartments. The family lived in Apartment 30 for about four years, and then they moved to Apartment 56.

"[M.]'s testimony was that she recalls moving into that apartment, Number 30, in the 7th grade. This would have been an incident— and we'll talk about this in a minute, but just for sake of clarity, so we can kind of keep things together and keep them straight, this would have been before an incident concerning her request to go to prom. This would have been a different oral copulation with the defendant, different than what she describes taking place when she asked Mr. Ramirez if she could go to the dance with Juan. That's a separate incident. We'll talk about that. I want to point that out because one of the elements is that she was under the age of 16, and this happened before the incident that she describes being a sophomore in high school. It's the People's position that . . . [M.] was under the age of 16 when this took place."

The prosecutor addressed count 15 in closing argument:

"Count 15, this would have been a separate incident from the prom incident. I keep going back to that so we can keep these in order. Again, this is unlawful or consensual sexual intercourse with [M.]. Defendant and

17

[M.] were not married at the time nor did [M.] consent. We'll talk more about that a little later. But, again, as the case with [C.], at no point did [M.] consent to any of these acts that took place.

"The defendant used force or fear or used force or duress. This was at Apartment 30. And again, this was a sexual act that she described penis in vagina before the prom incident, so this was in a separate incident that took place between [M.] and the defendant."

A criminal defendant has a constitutional right to a unanimous jury. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) "To protect this right, 'if one criminal act is charged, but the evidence tends to show the commission of more than one such act, "*either* the prosecution must elect the specific act relied upon to prove the charge to the jury, *or* the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act."'" (*People v. Brown* (2017) 11 Cal.App.5th 332, 341 (*Brown*).)

The presentation of evidence showing the commission of more than one act supporting a charged offense creates the requirement of either an unanimity instruction or the "'"prosecution must elect the specific act relied upon to prove the charge to the jury."'" (*Brown, supra,* 11 Cal.App.5th at p. 341.) "The prosecution can make an election by 'tying each specific count to specific criminal acts elicited from the victims' testimony'—typically in opening statement and/or closing argument. [Citations.] Such an election removes the need for an unanimity instruction. [Citation.] [¶] Under these principles, there is an implicit presumption that the jury will rely on the prosecution's election and, indeed, is bound by it." (*Ibid.*)

Here, no unanimity instruction was required because the prosecutor elected a specific act to prove each of the crimes charged in

counts 6, 14, and 15. The prosecutor expressly claimed count 6 was a single "instance" of "unlawful sexual intercourse" which "t[ook] place in [C.'s] sibling's room." The prosecutor similarly described count 14 as an "incident" of "oral copulation" which "t[ook] place in Apartment 30" and which occurred "before . . . her request to go to prom." Finally, the prosecutor expressly claimed count 15 was a "separate incident" of "penis in vagina" which occurred "before the prom incident."

By making such an election regarding counts 6, 14, and 15, the prosecution negated the need for an unanimity instruction. (*Brown*, *supra*, 11 Cal.App.5th at p. 341; see also *People v. Wilson* (2020) 56 Cal.App.5th 128, 162 [no need for unanimity instruction for multiple sex crimes where prosecutor made election in closing argument and expressly tied specific counts to specific acts of oral copulation and touching].)

### 3. Jury Instructions Regarding CSAAS

Ramirez argues the trial court erred in giving CALCRIM No. 1193 because it improperly allowed the jury to use the expert's testimony regarding CSAAS as evidence of his guilt.

The trial court admitted expert testimony by Dr. Veronica Thomas, a forensic psychologist. Thomas testified CSAAS evidence is used to describe and explain characteristic behaviors or stages commonly found in children who have been sexually abused. CSAAS is a tool to help therapists and others, such as jury members, understand why children who have allegedly been sexually abused behave as they do because these behaviors might otherwise seem counterintuitive or evidence of untruthfulness.

The trial court instructed the jury with CALCRIM No. 1193: "You have heard testimony from Dr. Veronica Thomas regarding child sexual abuse accommodation syndrome. [¶] Child sexual abuse accommodation

19

syndrome relates to a pattern of behavior that may be present in child sexual abuse cases. Testimony as to the accommodation syndrome is offered only to explain certain behavior of an alleged victim of child sexual abuse. [¶] Dr. Veronica Thomas' testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him. [¶] You may consider this evidence only in deciding whether or not [C., M., or D.]'s conduct was consistent with the conduct of someone who has been molested, and in evaluating the believability of the alleged victim."

CSAAS evidence "is not admissible to prove that the complaining witness has in fact been sexually abused; it is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming molestation." (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300.) Thus, CSAAS is relevant solely for the limited purpose of evaluating the credibility of an alleged child victim. (*People v. Mateo* (2016) 243 Cal.App.4th 1063, 1069.) This evidence "'is needed . . . to explain the emotional antecedents of abused children's seemingly self-impeaching behavior.'" (*McAlpin*, at p. 1301.)

Ramirez argues it was impossible for the jury to use the CSAAS testimony to evaluate the victims' credibility without also using it as proof that he committed the charged crimes, and therefore the trial court committed reversible error in giving the instruction.

Courts reviewing this issue have concluded CALCRIM No. 1193 "accurately informs the jury on the limited use of CSAAS evidence" and does not, as Ramirez argues, "improperly allow an alleged minor victim of sexual abuse to corroborate her own testimony." (See, e.g., *People v. Lapenias* (2021)

20

67 Cal.App.5th 162, 175.) Here, the instruction properly limited the jury's consideration of the CSAAS evidence, explicitly informing the jury that it could only use the CSAAS testimony to evaluate the victims' credibility, not as evidence of Ramirez's guilt. We presume the jury understood and followed the trial court's instructions. (*People v. Washington* (2017) 15 Cal.App.5th 19, 26 (*Washington*).) Accordingly, we find that the instruction did not permit an improper inference of Ramirez's guilt. (*People v. Gonzales* (2017) 16 Cal.App.5th 494, 504.*)*

### 4. CALCRIM No. 3515

Ramirez argues CALCRIM No. 3515 reduced the prosecution's burden of proof in violation of his right to due process because it erroneously instructed the jury it did not have to separately consider counts 2, 4, 6, 7, 9, 11–13, 15, 17, and 19–22.

At the time of its deliberations, the jury was asked to return verdicts on 20 separate counts. Defense counsel requested the trial court instruct the jury with CALCRIM No. 3515 regarding separate crimes. During a jury instruction conference, the court stated, "3515, I believe still needs to be given. These are the counts. Well, this specifies for each count is a separate crime other than the ones that have lesser included offenses, and those are specified as 2, 4, 6, 7, 9, 11 to 13, 15, 17, and 19 to 22. I think those are all the ones that have lessers." Defense counsel submitted on the instruction.

The trial court instructed the jury with CALCRIM No. 3515 as follows: "Each of the counts charged in this case is a separate crime. You must consider each count separately and return a separate verdict for each one except for Counts 2, 4, 6, 7, 9, 11-13, 15, 17, 19–22, which are for lesser included offenses and will be addressed in other instructions."

21

The trial court also instructed the jury with CALCRIM No. 3517 regarding the counts for which the jury received instructions on lesser included offenses, which also identified the applicable lesser crimes. The instruction stated, "If all of you find that the defendant is not guilty of a greater charged crime, you may find him guilty of a lesser crime, if you are convinced beyond a reasonable doubt that the defendant is guilty of that lesser crime. A defendant may not be convicted of both a greater and lesser crime for the same conduct." The instruction also stated, "It is up to you to decide the order in which you consider each crime and the relevant evidence, but I can accept a verdict of guilty of a lesser crime only if you have found the defendant not guilty of the corresponding greater crime."

During deliberations, the jury sent the following question to the trial court: "Some jurors are concerned that an inability to come to consensus on some charges might negate the consensus found on the other charges. Can we get clarity on this?" In response, the court further instructed the jury in person as follows:

"What I'm going to do is two things: One, I'm going to refer you back to instruction [CALCRIM] 3517, that is the very long one. But I'm also going to try to give you some clarity as well.

"There are two potential issues. One, every count stands individually. So a verdict on Count 1—or a lack of a verdict on Count 1, for instance, has no bearing on what you do on Count 4 or 7 or 13 or whatever or vice versa. Each one stands individually.

"You must try to reach a verdict on each count. If you're unable to do so, then you need to let me know which ones or one you cannot reach a verdict on, but you still must try to reach a verdict on all other counts.

22

"Then internally, for any count that has a lesser included offense or offenses, you always have to determine whether or not you can reach a verdict on the greater charge, the first charge first. If you cannot reach a verdict on that, then you simply stop. You don't go down the line further. The only time you go down the line further to lesser included offenses is if you have reached a verdict of not guilty as to that particular offense."

This claim is waived for failure to object to the instruction below. Defense counsel neither objected to, nor requested to modify the wording of, CALCRIM No. 3515. (*People v. Carrington* (2009) 47 Cal.4th 145, 189 [claim was forfeited where "[d]efendant did not request in the trial court that the . . . instruction be modified or limited in any way"].)

Even if the claim were not waived, it fails on the merits. The wording of CALCRIM No. 3515 accurately stated the law and did not allow the jury to consider all of the listed counts together or lessen the prosecution's burden of proof on any of these counts. (See *People v. Felix* (2008) 160 Cal.App.4th 849, 865 [CALCRIM No. 3515 does not suggest that charged counts constitute proven crimes or improperly inform the jury it must return verdicts].)

The instructions as a whole accurately informed the jury it must consider each charge separately, while also determining whether Ramirez was guilty of any lesser included offenses for the crimes charged in counts 2, 4, 6, 7, 9, 11–13, 15, 17, and 19–22. Moreover, CALCRIM No. 3517 made clear to the jury it could only convict Ramirez of either the greater or lesser crime, not both. In response to the jury's note, the trial court further explained to the jury it must consider each charge separately and could only convict Ramirez of a lesser included offense if it first found him not guilty of the greater offense. We assume the jury understood and followed the court's

23

instructions. (*Washington, supra,*15 Cal.App.5th at p. 26.) Under these circumstances, it is not reasonably likely the jury misinterpreted the instructions.

## III.

### LESSER INCLUDED OFFENSE

Ramirez contends his conviction on count 21 for sodomy with a minor (§ 286, subd. (b)(2)) must be reduced to sodomy (§ 286, subd. (b)(1)) because sodomy with a minor is not a lesser included offense of the predicate crime of aggravated sexual assault on a child under the age of 14 by committing forcible sodomy. The Attorney General concedes sodomy with a minor is not a lesser included offense of aggravated sexual assault on a child under the age of 14, but argues Ramirez impliedly agreed to the charge as a lesser related offense. Because we conclude Ramirez did not agree to the inclusion of section 286, subdivision (b)(2) as a lesser related offense, he can only be convicted of the offense of sodomy (§ 286, subd. (b)(1)).

### A. *Factual Background*

Count 21 of the amended information charged Ramirez with "violation of . . . section 269, subdivision (a), subsection (3), a felony, in that on, or between August 26, 2015 through November 20, 2015, . . . the defendant did commit a violation of subsection (2) or (3) of subdivision (c), or subdivision (d) of . . . section 286, SODOMY, by force, violence, duress, menace and fear of immediate and unlawful bodily injury, upon [D.], a child who was under 14 years of age and seven or more years younger than the defendant . . . ."

Ramirez requested the trial court instruct the jury on the lesser included offenses of simple assault and the underlying crime of sodomy on count 21. During initial discussions regarding jury instructions, the court and

24

parties agreed the predicate offense for count 21 was sodomy (§ 286, subd. (c)(2)(B)). Defense counsel requested the court instruct the jury on the lesser included offense of attempted sodomy, to which the court agreed. In response to the prosecutor's question, the court confirmed the attempted sodomy instruction would be pursuant to section 286, subdivision (c)(2)(B). The court also stated it would instruct on assault with intent to commit sodomy of a person under 18 years of age (§ 220, subd. (a)(2)) as a lesser included offense.

During a subsequent conference, the trial court raised count 21, which it characterized as "a difficult count with the lesser includeds." The court observed D. testified the offense occurred when "she was in 9th grade, but it was before her 14th birthday, and those are internally inconsistent, so the jury might find one way or the other." The court therefore concluded an appropriate lesser included offense for count 21 would be sodomy of a person under 16 years of age by any person over 21 years of age (§ 286, subd. (b)(2)). The court explained, "By giving [section] 286[, subdivision] (c)(2)(C) and [section] 286[, subdivision] (b)(2), we're covering the situation where the jury believes that the minor was over the age of 14 but either with force or without force." "So it's any person 21 years of age or over who participates in an act of sodomy with someone who is under 16, would be [section] 286[, subdivision] (b)(2). I think that is an appropriately given lesser." The court noted, "There's substantial evidence that [D.] was under 14. There's substantial evidence that she was over 14," and "the jury has to decide which one it is." The court then stated it believed the instruction "had to be given," to which the prosecutor replied, "Okay," and defense counsel stated, "Submit."

The trial court instructed the jury on count 21 with CALCRIM No. 1123, "Aggravated Sexual Assault of Child Under 14 Years (Pen. Code,

25

§ 269[, subd.] (a)).” The instruction stated the prosecution had to prove “[t]he defendant committed . . . Sodomy in violation of . . . section 286 [, subdivision] (c)(2)(B)” and “[w]hen the defendant acted, the other person was under the age of 14 years and was at least seven years younger than the defendant.”

The trial court also instructed the jury with CALCRIM No. 1030, “Sodomy by Force (Pen. Code, § 286[, subd.] (c)(2)(B)),” which stated the prosecution had to prove “[t]he defendant committed an act of sodomy with another person; [¶] . . . [t]he other person did not consent to the act; [¶] . . . [¶] . . . [t]he defendant accomplished the act by force or duress; [and] [¶] . . . [t]he other person was under 14 years of age when the act was accomplished.”

Finally, the trial court instructed the jury with CALCRIM No. 1091, “Sodomy With Minor: Defendant 21 or Older (Pen. Code, § 286[, subd.] (b)(2)),” which provided the prosecution must prove “[t]he defendant participated in an act of sodomy with another person; [¶] . . . [t]he defendant was at least 21 years old at the time of the act; [¶] AND [¶] . . . [t]he other person was under the age of 16 years at the time of the act.”

The jury found Ramirez not guilty of the principal offense in count 21, aggravated sexual assault of a child under 14 (§ 269, subd. (a)(3)); it instead found him guilty of the lesser included crime of sodomy with a minor (§ 286, subd. (b)(2)).

B. *Legal Standard*

Due process requires an accused be afforded “‘fair notice of the charges against him in order that he may have a reasonable opportunity properly to prepare a defense and avoid unfair surprise at trial.’” (*People v. Toro* (1989) 47 Cal.3d 966, 973, disapproved on other grounds in *People v. Guiuan* (1998) 18 Cal.4th 558, 568, fn. 3.; see also *People v. Anderson* (2020)

9 Cal.5th 946, 964 [proper notice allows the defendant "to make informed decisions about the case, including whether to plead guilty, how to allocate investigatory resources, and what strategy to deploy at trial"].) Therefore, a defendant generally cannot be convicted of an uncharged offense unless it is a necessarily included offense. (*In re Hess* (1955) 45 Cal.2d 171, 174–175.) This prohibition also applies to lesser related offenses unless the defendant consented to the lesser related crime. (*Toro*, at p. 973 ["where a defendant expressly or impliedly consents to have trier of fact consider a nonincluded offense," the defendant cannot claim lack of notice]. We review claims of instructional error de novo. (*Cole*, *supra*, 33 Cal.4th at p. 1210.)

*C.  Analysis*

We agree with Ramirez that he did not expressly or impliedly consent to sodomy with a minor as a lesser related offense of aggravated sexual assault on a child under the age of 14 by committing forcible sodomy. Here, the trial court erroneously believed sodomy with a minor was a lesser *included* offense and instructed the jury accordingly. There is no indication in the record that defense counsel was agreeing to the jury being instructed on the crime as a lesser *related* offense. (See *People v. Parks* (2004) 118 Cal.App.4th 1, 7 [where trial court asked parties to address lesser *included* offenses but convicted the defendant of lesser *related* offense, the defendant had no notice court was considering lesser related offenses]; *In re Alberto S.* (1991) 226 Cal.App.3d 1459, 1465 [noting "silence at the time the [erroneous] decision was announced cannot support an inference of [the defendant's] consent" where "[n]o mention was made during the proceedings of lesser, nonincluded offenses"].)

Accordingly, we reduce Ramirez's conviction on count 21 to sodomy (§ 286, subd. (b)(1)), a lesser included offense of the crime of

27

aggravated sexual assault on a child under the age of 14 by committing forcible sodomy and affirm the judgment as modified. (§§ 1260, 1181, subd. 6; see also *People v. Rivera* (2003) 114 Cal.App.4th 872, 879 [""Where the prejudicial error goes only to the degree of the offense for which the defendant was convicted, the appellate court may reduce the conviction to a lesser degree and affirm the judgment as modified, thereby obviating the necessity for a retrial""]).

## IV.

### PROSECUTORIAL MISCONDUCT

Ramirez argues the prosector committed misconduct by indoctrinating and conditioning the jury during voir dire and improperly vouching for the credibility of the witnesses during closing argument. We conclude that, although the prosecutor's statements during voir dire constituted misconduct, any error was harmless. We further conclude the prosecutor's statements during closing argument did not constitute misconduct.

### A. Factual Background

#### 1. Voir Dire

The prosecutor asked potential jurors several questions regarding why sexual abuse generally occurs in private without additional witnesses. The prosecutor queried, "Would it make sense, then for somebody who's committing those types of acts to do that when maybe there's no one else around but that person—the person being abused?" The trial court sustained defense counsel's objection to this line of questioning as "improper voir dire."

The prosecutor then began questioning potential jurors about delayed disclosure of child sexual abuse. One potential juror responded, "Well, if you—if you read and you learn a few things about it, it's usually a

person in power, like a teacher, or student, coach, athlete, principal, teacher, or whatever. It's always a person that has some kind of authority or authority figure, something like that." The prosecutor then asked, "Could that also extend to a family member?" Defense counsel objected, and the trial court requested to speak to counsel at sidebar.

The trial court directed the prosecutor to limit discussion of child abuse. The prosecutor explained, "I think in talking to the jurors about whether there might be witnesses or not would go to the law on the instructions they will get under one witness being sufficient. That's why I went in that direction." "And then with regards to asking about why a person may not disclose right away, I think that does go directly to the credibility of the witnesses who will testify because they didn't disclose right away, and I want to see if that does play a determining factor in the jurors'—or potential jurors' credibility decision making, and that's why I asked that question, Your Honor." The court sustained defense counsel's objection noting "all I'm hearing is a discussion about child abuse which really does start to rise to the level of indoctrination and so forth."

Defense counsel moved for a mistrial, arguing Ramirez could no longer receive a fair trial because the prosecutor had improperly conditioned the jury. The trial court denied the motion for mistrial, concluding the prosecutor's questions had not risen "to a level where it's affected/preconditioned the entire jury to deprive [Ramirez] of his due process right to a fair trial . . . ." The prosecutor did not ask any similar questions upon resuming voir dire.

2.  Closing Argument

Defense counsel asked D. on cross-examination whether she had been told by anyone that when she came to court to testify, she should look

29

away from her father. D. replied the prosecutor told her "if it made [her] feel more comfortable, [she could] look somewhere else instead of at [her] father."

During closing argument, the prosecutor addressed the manner in which M., C., and D. testified:

"I want you also to not forget how they testified, and I want you to recall that. I want you to remember that because that's crucial. Because it's not simply what they said, but it's how they said it, and how they sat there, and when they needed breaks, and why they needed breaks, and how they sat positioned away from the defendant, which I suppose one could argue is indicative of lying. One could say, 'Well, you're being dishonest. You can't even face that person.' That's one way to look at it.

"The other way—the more reasonable interpretation of that is that these young women came in here, talked about horrific abuse over the course of several years at the hands of a man they put their trust in, and when they did that, that man sat near feet from them. And so if they turned in their chair, they didn't want to look directly at him, folks, that's understandable—that's understandable.

"We talked about this in jury selection and how there really is no right way to respond to trauma. There's no handbook on how a person should recall that, particularly in a room full of strangers, particularly in front of the person who has abused you."

During closing argument, defense counsel pointed out that none of the alleged victims had looked at the jury, counsel, or Ramirez during their testimony. Defense counsel reminded the jury that D. testified the prosecutor told her she could look away when she testified. Defense counsel refuted the prosecutor's argument that D. was so traumatized by Ramirez's abuse that

she could not even look at him, arguing that the prosecutor "told [D.] not to look at us. He told her to not to look at you. You were denied that."

Defense counsel continued, "And that is something the jury instructions tell you. Look at the witness's behavior on the stand. . . . [W]e always talk about witnesses who have, you know, shifty eyes and where they look down when they testify, they can't look you in the eye. Those are things that we all know from life experience. Yeah, those are the hallmarks of a liar. [¶] Here we don't even get to see that because she can't face us. She can't face her father when she makes these bald lies against him. She can't face you. You're the jury, the trier of fact, and you're the ones who determine credibility and whether or not these facts are true. She can't face you."

The following day, while the jury was deliberating, defense counsel moved for a mistrial, arguing the prosecutor committed misconduct by improperly vouching for the witnesses' credibility during closing argument. More specifically, defense counsel contended the prosecutor impermissibly directed the witnesses not to look at Ramirez while testifying and then used their failure to make eye contact as evidence they were telling the truth.

The trial court noted there was "a webcam pointed at the witness, which is projected to all members of the jury," and there were also "large-screen" television monitors in the courtroom where any observer could see the witnesses' facial expressions. The court then denied the motion for mistrial, concluding there had not been any intentional misconduct by the prosector and Ramirez had not been denied his right to due process and a fair trial.

*B. Legal Standard*

"To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements." (*People v. Frye* (1998) 18 Cal.4th 894, 970 (*Frye*), disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) A claim of prosecutorial misconduct is governed by the abuse of discretion standard of review. (*People v. Alvarez* (1996) 14 Cal.4th 155, 213.)

*C. Analysis*

1. Voir Dire

In a criminal case, "(a) . . . the trial judge shall conduct an initial examination of prospective jurors . . . . [¶] (b)(1) Upon completion of the trial judge's initial examination, counsel for each party shall have the right to examine, by oral and direct questioning, any of the prospective jurors . . . . [¶] . . . [¶] (g) The trial judge's exercise of discretion in the manner in which voir dire is conducted . . . is not cause for a conviction to be reversed, unless the exercise of that discretion results in a miscarriage of justice, as specified in Section 13 of Article VI of the California Constitution." (Code Civ. Proc., § 223, subds. (a), (b)(1), (g).) We consider whether there is a reasonable likelihood the jury construed or applied any of the prosecutor's improper remarks in an objectionable fashion. (*People v. Ayala* (2000) 23 Cal.4th 225, 284.)

Additionally, as our Supreme Court has observed, "'it is unlikely that errors or misconduct occurring during voir dire questioning will unduly

32

influence the jury's verdict in the case. Any such errors or misconduct "prior to the presentation of argument or evidence, obviously reach the jury panel at a much less critical phase of the proceedings, before its attention has even begun to focus upon the penalty issue confronting it."'" (*People v. Seaton* (2001) 26 Cal.4th 598, 636.)

Here, the prosecutor's comments, as a whole, appear to be an attempt to precondition the jurors to believe the witnesses' testimony by asking leading questions regarding why child sexual abuse victims may not immediately report the abuse and why there are likely to be no other witnesses to these kinds of crimes. This constitutes prosecutorial misconduct. (*Frye*, *supra*, 18 Cal.4th at p. 971, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *People v. Castillo* (2008) 168 Cal.App.4th 364, 386.)

However, any error by the prosecutor did not result in a miscarriage of justice. Reversal of a judgment of conviction based on prosecutorial misconduct is called for only when, after reviewing the totality of the evidence, we can determine it is reasonably probable that a result more favorable to defendant would have occurred absent the misconduct. (See *People v. Bell* (1989) 49 Cal.3d 502, 534; *People v. Watson* (1956) 46 Cal.2d 818, 836.) The evidence of Ramirez's guilt was strong. M., C., and D. all testified regarding Ramirez's yearslong sexual abuse, and their testimony regarding the kind, location, and method of abuse were all similar. Moreover, a DNA test identified Ramirez as the father of C.'s daughter. We therefore conclude Ramirez would not have received a more favorable result even absent the prosecutor's comments to the jury during voir dire.

### 2. Closing Argument

Prosecutors "ha[ve] a wide-ranging right to discuss the case in closing argument." (*People v. Lewis* (1990) 50 Cal.3d 262, 283.) Thus, "'''[p]rosecutors have wide latitude to discuss and draw inferences from the evidence [presented] at trial,'''" and the question of "'''[w]hether the inferences the prosecutor draws are reasonable is for the jury to decide.'''" (*People v. Shazier* (2014) 60 Cal.4th 109, 127.) Accordingly, "prosecutorial commentary should not be given undue weight." (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1224, fn. 21, superseded by statute on other grounds as stated in *In re Steele* (2004) 32 Cal.4th 682, 691.) "Juries are warned in advance that counsel's remarks are mere argument, missteps can be challenged when they occur, and juries generally understand that counsel's assertions are the 'statements of advocates.' Thus, argument should 'not be judged as having the same force as an instruction from the court. And the arguments of counsel, like the instructions of the court, must be judged in the context in which they are made.'" (*Gonzalez*, at p. 1224, fn. 21, quoting *Boyde v. California* (1990) 494 U.S. 370.)

Here, the prosecutor's remarks during closing argument did not rise to the level of prosecutorial misconduct. The prosecutor's comments regarding the witnesses' demeanors and reluctance to look at their father while testifying was a fair comment on the evidence. It is the very function of the jury to assess a witness's credibility, including evidence of the witness's demeanor while testifying. (*People v. Clark* (2019) 43 Cal.App.5th 270, 295.)

Moreover, any alleged error was ameliorated by the trial court instructing the jury that the attorney's arguments do not constitute evidence upon which the jury can rely in deciding guilt. Further, defense counsel refuted the prosecutor's argument when counsel argued during closing that

the witnesses were not credible because they did not look at Ramirez, counsel, or the jury while testifying. The prosecutor also noted during closing, "My argument this morning is not evidence. Nothing I say is evidence . . . ." Finally, as noted above, any alleged error was harmless given the strength of the evidence against Ramirez.

## V.

### CUMULATIVE ERROR

Ramirez contends the errors alleged above, even if not individually prejudicial, rendered his trial fundamentally unfair when viewed in combination. In examining a claim of cumulative error, the critical question is whether the defendant received due process and a fair trial. (*Cain, supra*, 10 Cal.4th at p. 82). There can be no cumulative error if the challenged rulings were not erroneous. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1382, [no cumulative error where court "rejected nearly all of defendant's assignments of error"].) Because we reject Ramirez's claims of error individually, these claims necessarily do not constitute error when viewed as a whole. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009.)

## VI.

### FAILURE TO STAY SENTENCE PURSUANT TO SECTION 654

Ramirez argues his conduct in committing the offenses in counts 11 and 12 and in counts 16 and 17 occurred during a continuous course of conduct, and therefore, the trial court erred in failing to stay execution of sentence on two of these counts. We disagree.

*A. Factual Background*

   1. Counts 11 and 12

M. testified Ramirez raped her when she was 11 or 12 years old and in the fifth grade. She further testified that, during the same incident,

Ramirez put her hand on his penis and had her move her hand back and forth; he also put his hands on her breasts. Based on the prosecutor's closing arguments, the lewd act in count 12 was based on Ramirez putting M.'s hand on his penis during the same incident as the rape in count 11.

Ramirez was convicted of aggravated sexual assault on a child under the age of 14 by committing forcible rape as charged in count 11 and of committing a lewd or lascivious act by force on a child under the age of 14 in count 12. The trial court sentenced him to consecutive terms of 15 years to life on count 11 and 6 years on count 12.

### 2. Counts 16 and 17

M. testified that, when she was in high school, Ramirez gave her permission to go to the prom with her boyfriend. In exchange for his permission, Ramirez required M. to orally copulate and have sexual intercourse with him. Based on the prosecutor's closing arguments and the verdict forms, both of the acts which formed the bases for counts 16 and 17 occurred during "the prom incident."

Ramirez was convicted of forcible oral copulation in count 16 and forcible rape in count 17. The trial court sentenced him to consecutive terms of 15 years to life on each of counts 16 and 17.

### B. *Legal Standard*

Section 654, subdivision (a), provides, "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." "Even though section 654 refers to an 'act or omission,' . . . the relevant question is typically whether a defendant's "'course of conduct . . . comprised a divisible transaction which could be punished under more than one statute within the meaning of section

36

654.' " [Citation.] . . . 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' " (*People v. Correa* (2012) 54 Cal.4th 331, 335–336.)

"[S]ection 654 does *not* bar multiple punishment simply because numerous sex offenses are rapidly committed against a victim with the 'sole' aim of achieving sexual gratification." (*People v. Harrison* (1989) 48 Cal.3d 321, 325.) "Such offenses are generally 'divisible' from one another under section 654, and separate punishment is usually allowed." (*People v. Scott* (1994) 9 Cal.4th 331, 344, fn. 6.) If multiple punishment were barred for separate lewd acts committed on the same occasion, "the clever molester could violate his victim in numerous lewd ways, safe in the knowledge that he could not be convicted and punished for every act." (*Id.* at p. 347.) Thus, "section 654 does not preclude separate punishment for multiple sex offenses which, although closely connected in time and part of the same criminal venture, are separate and distinct, and which are not committed as a means of committing any other sex offense, do not facilitate commission of another sex offense, and are not incidental to the commission of another sex offense." (*People v. Castro* (1994) 27 Cal.App.4th 578, 584–585 (*Castro*).)

"Whether [section 654] 'applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them.' " (*People v. Vang* (2010) 184 Cal.App.4th 912, 915–916.)

*C. Analysis*

Substantial evidence supports Ramirez's commission of two separately punishable acts in counts 11 and 12 and in counts 16 and 17. A review of M.'s testimony establishes the acts in counts 11 and 12 were separate and were not incidental to each other. M. testified Ramirez raped her when she was 11 or 12 years old, an act which formed the basis of count 11, and that, during the same incident, he put her hand on his penis and had her move it back and forth and also touched her breasts, acts which formed the basis of count 12. Neither act was "committed as a means of committing any other sex offense, [nor] facilitate[d] commission of another sex offense, [nor was] incidental to the commission of another sex offense." (*Castro, supra*, 27 Cal.App.4th at p. 585.)

Similarly, although the acts which formed the basis for counts 16 and 17, forcible oral copulation and forcible rape respectively, both occurred during the same "prom" incident, neither act was necessary to nor facilitated the other. (See *People v. Alvarez* (2009) 178 Cal.App.4th 999, 1007 [trial court could have reasonably concluded that kissing child was separately punishable under section 654 and not "merely designed to facilitate the subsequent acts of penetration and fondling"].)

Accordingly, the trial court properly imposed consecutive sentences on each of counts 11 and 12 and counts 16 and 17.

VII.

IMPOSITION OF SENTENCE PURSUANT TO SECTION 667.61

Ramirez next contends his due process rights were violated by the trial court's unauthorized imposition of sentence pursuant to section 667.61, subdivision (b), because the enhancement was not pled and proven at trial. He further argues the court had no authority to substitute the

38

subdivision (b) enhancement in place of the subdivision (m) enhancement which had been improperly pled and found true. We agree with Ramirez he was improperly sentenced under section 667.61, subdivision (b).

A. *Factual Background*

The first amended information, under the description of the offenses in counts 4, 6, 7, and 15–17 stated: "It is further alleged that in the commission of the above offense, a crime listed in subdivision (n) of section 667.61, to wit, [Penal Code section] . . . , the victim of the above offense was a minor 14 years of age or older at the time of the offense within the meaning of . . . section 667.61, subdivision (m)."

Section 667.61, subdivision (m), provides, "A person who is convicted of an offense specified in subdivision (n) under one of the circumstances specified in subdivision (e) against a minor 14 years of age or older shall be punished by imprisonment in the state prison for 25 years to life."

The first amended information also alleged the following special allegation: "It is further alleged that in the present case and cases defendant committed a qualifying sex offense against more than one victim as listed in Penal Code section 667.61, subdivision (e), subsection (4)."

The jury found true the section 667.61, subdivision (m) enhancement allegations as to counts 4, 6, 7, and 15–17. The jury also found true that counts 1, 2, 4, 6, 7, 9–10, 12–13, 15–20, and 23 had been committed against more than one victim, pursuant to section 667.61, subdivision (e)(4).

Although the jury found true the section 667.61, subdivision (m) enhancements, the offenses alleged in the counts attached to these enhancements each occurred prior to September 9, 2010, the operative date of the statute. (See Stats. 2010, ch. 291, § 16.) Accordingly, as the trial court

39

acknowledged during sentencing, the subdivision (m) enhancements [of section 667.61] were improperly pled and proven. However, the court concluded it was appropriate to sentence Ramirez pursuant to section 667.61, subdivision (b), instead:

"That being said, at the time of the commission of those particular offenses, the exact same acts constituting what was charged as [section] 667.61[, subdivision] (m) and found true by the jury under the (m) subdivision, would have been an act under [section] 667.61, subdivision (b)."

The court continued, "The salient difference being [section] 667.61[, subdivision] (m) is applicable to specific offenses under circumstances in subdivision (e) to a minor 14 years of age or older.

"Under subdivision (b) [of section 667.61], although it is a more limited set of qualifying offenses, it still must be under one of the qualifying factors—one or more of the qualifying factors under subdivision (a)—under subdivision (e). Excuse me. So as it all kind of comes out in the wash, instead of being a qualifying factor under [subdivision] (m), which would trigger the alternative sentencing of 25 to life, I believe it comes out under [subdivision] (b), triggering the alternative sentencing scheme of 15 years to life.

"I think this is much like a—I'm going to call it a lesser included. Although I don't know technically if that is the correct term of art or the correct legal term to use, nonetheless, the exact same conduct which was found by the jury to be true, which was a particular qualifying offense— actually, the Court found the qualifying offense—not that it applies to a qualifying offense, not the jury. And then the jury made the determination that there were two or more victims in the same case. That was the factor under subdivision (e) [of section 667.61], which the jury had to find true as they were charged with in the jury instructions and then found true findings.

40

"So wherever there is a [section] 667.61[, subdivision] (m), my intention is to not sentence under [subdivision] (m) of 25 to life but to sentence under subdivision (b) which would be a 15 to life. I believe that that is the only alternative which I would have at this point.

"All of the offenses for which Mr. Ramirez was convicted which qualified under [subdivision] (m) [of section 667.61] also qualify under subdivision (b). The list, although not identical, those particular offenses do, in fact, appear on both sides of the equation, both under [subdivision] (m) and . . . [subdivision] (b)."

Defense counsel objected to sentencing Ramirez under section 667.61, subdivision (b), because the jury had not made findings with respect to that particular subsection. The trial court overruled the objection and imposed sentences of 15 years to life on counts 4, 6, 7, 11, and 15–17, pursuant to section 667.61, subdivision (b).

## B. Legal Standard

"A defendant has a due process right to fair notice of any sentencing allegation that, if proven, will increase the punishment for a crime." (*In re Vaquera* (2024) 15 Cal.5th 706, 717 (*Vaquera*).) Therefore, "the prosecution must provide the defendant 'fair notice of the qualifying statutory circumstance or circumstances that are being pled, proved, and invoked in support of One Strike sentencing.'" (*Id.* at p. 718) The factual circumstances authorizing the imposition of the One Strike law must be pled and proved; the court may not consider any sentencing factors that have not been alleged in the accusatory pleading and found true by the jury or admitted by the defendant. (*People v. Mancebo* (2002) 27 Cal.4th 735, 743 (*Mancebo*).)

41

*C. Analysis*

The Attorney General acknowledges the charging document did not include any section 667.61, subdivision (b), allegations but argues the trial court, at sentencing, properly substituted these allegations on the counts where the jury found true the allegations under section 667.61, subdivision (m). More specifically, the Attorney General contends that, because the elements for a longer sentence of 25 years to life under section 667.61, subdivision (m), had been pled and proven, the court properly sentenced Ramirez to the lesser sentence of 15 years to life under subdivision (b) of section 667.61, even though that section was not proved. We disagree.

In *Vaquera*, the Supreme Court held that, in alleging a multiple victim circumstance under section 667.61, subdivision (b), which provides for a sentence of 15 years to life, the prosecution did not provide the defendant with fair notice it would seek a sentence of 25 years to life, which is specified when a victim is under 14 years of age under a different section of the "One Strike" law. (§ 667.61, subd. (j)(2).) (*Vaquera, supra*, 15 Cal.5th at p. 722.) The court reversed the 25 years to life sentence imposed by the trial court and remanded for resentencing. (*Id.* at p. 726.) The court concluded the error was not harmless because the defendant did not receive adequate notice of the sentence before the case was submitted to the jury, and therefore, did not have sufficient opportunity to request additional time to prepare a defense. (*Id.* at p. 728.)

Here, the accusatory pleading did not reference subdivision (b) of section 667.61 and therefore did not put Ramirez on fair notice he could be sentenced under that subdivision in place of the sentencing enhancements actually (although improperly) alleged under subdivision (m). (See, e.g., *People v. Villegas* (2023) 97 Cal.App.5th 253, 269–279 (*Villegas*) [information,

which alleged special allegations pursuant to section 667.61, subdivisions (b) and (e), did not give the defendant adequate notice that the prosecution would seek sentencing pursuant to subdivision (m)]; *People v. Nash* (2023) 87 Cal.App.5th 483, 495 ["[W]here a pleading explicitly recites an exposure of 15 years to life as the sentencing effect of allegations under subdivisions (b), (c), and (e) of section 667.61, it does not put a defendant on fair notice that he might face exposure of 25 years to life under subdivision (j)(2), even if the pleading alleges facts that would support the 25-year-to-life sentence if found true"].)

The Attorney General argues *Mancebo*, *Vaquera* and *Villegas* are inapposite because those cases "deal with the issue of applying a greater sentence than what was pleaded in the charging document," whereas here, Ramirez was sentenced to a lesser sentence. However, the Attorney General fails to cite, and we have been unable to locate, any authority to support its position that the trial court's imposition of an unauthorized sentence is harmless simply because the defendant received a lesser sentence than he or she might have otherwise. Here, the court improperly substituted subdivision (b) of section 667.61 in place of subdivision (m). Accordingly, the sentences on counts 4, 6, 7, and 15–17 are reversed, and the matter is remanded to the court for resentencing on those counts.

VIII.

SENTENCING ERROR

Ramirez argues he must be resentenced on count 11 because that count was not subject to sentencing under any provision of section 667.61. He further contends that, although the offense is punishable by a term of 15 years to life, the trial court was not required to impose the indeterminate

43

term consecutively. We agree the sentence in count 11 must be reversed and remanded for resentencing.

In count 11, Ramirez was convicted of aggravated sexual assault of a child under 14 years of age (§ 269, subd. (a)(1)). The sentence for the crime is 15 years to life in state prison (§ 269, subd. (b)). Although aggravated sexual assault of a child under section 269 does not fall within any sentencing scheme encompassed in section 667.61, the trial court nevertheless sentenced Ramirez to a consecutive term of 15 years to life on count 11 "pursuant to [section] 667.61, subdivision (b)."[2]

Furthermore, the first amended information and verdict form for count 11 states the offense occurred "on, or between February 29, 2003 through February 28, 2005." At the time count 11 was committed, section 269 did not include subdivision (c), which currently requires imposition of a consecutive sentence under certain circumstances. Section 269 was amended to add subdivision (c) in 2006 (See Stats. 2006, ch. 337, § 6), after the instant crime was committed. Thus, the statute in effect at the time of the charged crime did not require a consecutive term for each offense, and the trial court therefore imposed an unauthorized sentence.

The Attorney General argues any error was harmless because the trial court stated that all of the life sentences would be imposed consecutively

---

[2] We disagree with the Attorney General's contention the trial court correctly sentenced Ramirez under section 667.61 because count 11 was charged as aggravated sexual assault of a child (§ 269, subd. (a)(1)) by committing rape (§ 261, subd. (a)(2) or (6)), and rape is one of the qualifying offenses punishable under section 667.61. Ramirez was convicted in count 11 of aggravated sexual assault of a child, not rape, and aggravated sexual assault of a child is not one of the qualifying offenses under section 667.61.

44

and therefore, it would have imposed the same sentence even if it had been aware of the error.

"'"Defendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that 'informed discretion' than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record."'" (*People v. Salazar* (2023) 15 Cal.5th 416, 424.) The appropriate remedy in such cases "is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391; *Salazar,* at p. 425.)

Here, there is no clear indication in the record the trial court would have imposed a consecutive sentence on count 11 if it had been aware that aggravated sexual assault of a child (§ 269, subd. (a)(1)) was not a qualifying offense subject to sentencing under section 667.61, subdivision (b), and if it were aware that the version of the law in effect at the time of the commission of the offense did not require a consecutive sentence. Accordingly, we reverse the sentence in count 11 and remand for resentencing.

IX.

AMENDMENT OF JUDGMENT

Ramirez argues the first amended abstract of judgment contains clerical errors in its description of the offenses in counts 4, 7, 20, and 21. Ramirez contends the abstract of judgment also incorrectly indicates the sentence on count 17 was a consecutive full term, and the sentence on count 11 was imposed pursuant to section 667.61, subdivision (b). We agree the amended abstract of judgment must be corrected.

45

Ramirez was convicted of sexual penetration by force (§ 289, subd. (a)(1)(C)) in count 4. However, the first amended abstract of judgment describes the crime as "Sexual penetration w/bodily." We agree the description does not accurately describe the crime in count 4 and direct the abstract of judgment be amended to "sexual penetration by force."

Ramirez was convicted of sodomy by force (§ 286, subd. (c)(2)(C)) in count 7, while the first amended abstract of judgment describes the crime as "Participate in sodomy by force." We agree the description does not accurately describe the crime in count 7 and direct the abstract of judgment be amended to "sodomy by force."

Ramirez was convicted of sexual penetration by force (§ 289, subd. (a)(1)(A)) in count 20, while the first amended abstract of judgment describes the crime as "Unlawful bodily injury/sex." We agree the description does not accurately describe the crime in count 20 and direct the abstract of judgment be amended to "sexual penetration by force."

Ramirez was convicted of sodomy with minor: defendant 21 or older (§ 286, subd. (b)(2)) in count 21, while the first amended abstract of judgment describes the crime as "Sodomy w/Under 16." We agree the description does not accurately describe the crime in count 21 and direct the abstract of judgment be amended to "sodomy w/minor."

Additionally, Ramirez argues the first amended abstract of judgment should be amended to accurately reflect the sentences imposed in counts 11 and 17. Because we conclude the sentences in counts 11 and 17 must be reversed and remanded for the reasons discussed above, we decline to address Ramirez's claim of error regarding these counts in the abstract of judgment. Instead, the trial court is directed to amend the abstract of

46

judgment to accurately reflect the sentences imposed upon remand in counts 11 and 17.

Accordingly, upon remand, the trial court shall prepare an amended abstract of judgment which corrects Ramirez's sentence as provided.

## DISPOSITION

Ramirez's conviction in count 21 is modified to find him guilty of sodomy in violation of section 286, subdivision (b)(1), and the judgment on count 21 is affirmed as modified. The sentences on counts 4, 6, 7, 11, and 15–17 must be reversed and remanded to the trial court for resentencing. Upon resentencing and consistent with the above, the trial court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

DELANEY, J.

WE CONCUR:

MOORE, ACTING P. J.

GOODING, J.